785 F.2d 310
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
LIANE ROWENA ESTRELLA REYES, Petitioner,
vs.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 85-3211
 United States Court of Appeals, Sixth Circuit.
 1/29/86
 
 Before: CONTLE and MILBURN, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Liane Rowena Reyes petitions for review of the decision by the Board of Immigration Appeals (Board) denying her motion to reopen proceedings. She argues that the Board abused its discretion in denying her motion. Finding no abuse of discretion, we deny the petition and affirm the Board's decision.
 
 I.
 
 2
 Reyes is a native and citizen of the Philippines. On August 15, 1975, she entered the United States legally as an exchange student pursuant to 8 U.S.C. Sec. 1101(a)(15)(J). Her visa authorized her to remain in the United States until September 1, 1976, but she has remained here continuously since her arrival. The Immigration and Naturalization Service (INS) initiated deportation proceedings on November 14, 1979 by issuance of an Order to Show Cause and Notice of Hearing. At a hearing before an immigration judge, Reyes admitted she was deportable but requested political asylum and withholding of deportation. In a decision dated July 29, 1980, the judge denied Reyes' request and ordered that Reyes be granted voluntary departure in lieu of deportation. The Board subsequently upheld the decision on appeal.
 
 
 3
 Reyes petitioned this court for review and in 1982 this court reversed and remanded the case to the Board. Reyes v. INS, 693 F.2d 597 (6th Cir. 1982). Relying on INS v. Stevic, 678 F.2d 401 (2d Cir. 1982), we held that the Board erred in requiring Reyes to demonstrate a 'clear probability' that she would be persecuted if returned to the Philippines and that Reyes had presented sufficient evidence of the likelihood of persecution. Mandate of that decision was withheld, however, pending Supreme Court review of the Stevic decision.[1]
 
 
 4
 The Supreme Court subsequently reversed Stevic and held that an alien seeking asylum must demonstrate a 'clear probability' of persecution. INS v. Stevic, 104 S. Ct. 2489 (1984). This court then reconsidered its earlier opinion in light of the Supreme Court's endorsement of the 'clear probability' standard. In a decision dated August 23, 1984, we concluded that Reyes had failed to show a 'clear probability' of persecution and, accordingly, we vacated the prior decision and affirmed the Board's decision denying Reyes' petition for asylum. Reyes v. INS, 747 F.2d 1045 (6th Cir. 1984).
 
 
 5
 On January 10, 1985, Reyes filed a motion to reopen her deportation proceedings for the purpose of applying for suspension of deportation pursuant to Sec. 244(a)(1) of the Immigration and Naturalization Act (Act), 8 U.S.C. Sec. 1254(a)(1).[2] In support of her motion and in accordance with the requirements of Sec. 1254(a)(1), Reyes claimed that she had been present in the United States continuously for seven years, that she is of good moral character, and that she would suffer extreme hardship if deported. Reyes stated that extreme hardship would result from being separated from her American uncle and cousin with whom she had lived since 1975 and from persecution in the Philippines. In further support of her motion to reopen, Reyes submitted affidavits from her uncle and cousin and a Cincinnati police record transcript showing no arrests or convictions in Cincinnati, where she has resided. She also submitted a previously submitted letter from a Jesuit priest, dated March 17, 1980, concerning the gravity of the political situation in the Philippines and other previously submitted documents describing the state of affairs in the Philippines. Reyes also relied on the findings in this court's vacated decision.
 
 
 6
 On March 6, 1985, the Board denied Reyes' motion to reopen. The Board held that Reyes had failed to establish a prima facie case of extreme hardship. The Board observed that separation from her uncle and cousin would not constitute extreme hardship since she would be with her immediate family in the Philippines. As for the political conditions in the Philippines and Reyes' fear of persecution, the Board noted that Reyes mainly relied on the same contentions and documents asserted in her previous request for asylum. The Board determined that her evidence only illustrated the general conditions in the Philippines and failed to show how she personally would be mistreated upon her return. Such evidence, the Board concluded, did not establish extreme hardship.
 
 
 7
 Reyes timely appealed from the Board's decision, with jurisdiction arising under 8 U.S.C. Sec. 1105(a).
 
 II.
 
 8
 Regulations promulgated under the Act permit an alien to file a motion to reopen deportation proceedings in order to apply for discretionary relief, including suspension of deportation pursuant to Sec. 1254(a)(1), but only if 'it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing.' 8 CFR Sec. 3.2 (1985); INS v. Jong Ha Wang, 450 U.S. 139, 140-41 (1981) (per curiam). Such motions 'shall state the new facts to be proved at the reopened hearing and shall be supported by affidavits or other evidentiary material.' 8 CFR Sec. 3.8 (1985).
 
 
 9
 The decision whether to grant a motion to reopen is within the discretion of the Board. INS v. Phinpathya, 464 U.S. 183, 188 n.6 (1984); Wang, 450 U.S. at 143, n.5; Balani v. INS, 669 F.2d 1157, 1160 (6th Cir. 1982). Even when a prima facie case for suspension of proceedings is established, the Board may still deny a motion to reopen as a matter of discretion. INS v. Rios-Pineda, 105 S. Ct. 2098, 2102 (1985). Accordingly, the only inquiry on review before this court is whether the Board abused its discretion in denying Reyes' motion.
 
 
 10
 This court has stated that in determining whether the Board has abused its discretion in denying a motion to reopen deportation proceedings we will examine whether the denial 'was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group.' Balani, 669 F.2d at 1161.[3] In light of this standard, as well as the 'exceptional nature of the suspension remedy,' Wang, 450 U.S. at 145, and the 'unusual degree of discretion given to the Board in immigration matters,' Dallo v. INS, 765 F.2d 581, 588 (6th Cir. 1985), we hold that the Board did not abuse its discretion in concluding that Reyes failed to establish a prima facie case for suspension of deportation and denying her motion to reopen.
 
 
 11
 First, the Board's decision was based on a rational explanation. The Board's opinion thoroughly addressed all of Reyes' claims. The Board rationally found that Reyes' separation from her uncle and cousin would not constitute extreme hardship, especially since she would be reunited with her immediate family in the Philippines. Accord, Bueno-Carrillo v. Landon, 682 F.2d 143, 146 (7th Cir. 1982). The Board also fully considered whether Reyes' evidence established that she would suffer extreme hardship because of persecution in the Philippines in concluding that it did not. The Board correctly observed that much of her evidence was previously submitted and relied upon in her application for asylum. The only new intervening fact was that she had met the prerequisite under Sec. 1254(a)(1) of having been in the United States continuously for seven years. The Board further observed that her claims of future individual persecution were general assertions without specific, particularized support. The Board then stated that a general lack of civil rights affecting the entire population of a country does not establish extreme hardship and accordingly concluded that Reyes' evidence did not establish extreme hardship either. Due to the Board's thorough analysis of Reyes' evidence of hardship, it cannot be said that its decision was made without rational explanation.
 
 
 12
 Second, the Board did not depart from established policies or rest its decision on an impermissible basis such as invidious discrimination against a particular race or group. By holding that Reyes' evidence of general conditions in the Philippines was insufficient, the Board remained consistent with the policy that a petitioner claiming persecution is required to establish that the petitioner as an individual would be subject to persecution upon deportation. See generally, Dally v. INS, 744 F.2d 1191, 1195 (6th Cir. 1984). Reyes' claims that she will be arrested upon her return are conclusory and are without specific support and it was therefore within the Board's discretion to hold that such evidence was insufficient to establish extreme hardship.
 
 
 13
 In finding that the Board did not abuse its discretion, we also reject Reyes' arguments that her case is significantly distinguished from INS v. Rios-Pineda, 105 S. Ct. 2098 (1985). In Rios-Pineda, the Court reversed the Eighth Circuit in holding that the Board's denial of a motion to reopen deportation proceedings was within its discretion. The petitioner in Rios-Pineda had never been in this country legally. In analyzing the Board's discretion in light of petitioner's flagrant violations of federal law, the Court stated:
 
 
 14
 it is untenable to suggest that the Attorney General has no discretion to consider [petitioners'] individual conduct and distinguish among them on the basis of the flagrancy and nature of their violations. There is a difference in degree between one who enters the country legally, staying beyond the terms of a visa, and one who enters the country without inspection. . . . Furthermore, the Attorney General can certainly distinguish between those who, once apprehended, comply with the laws, and those who refuse to honor previous agreements to report for voluntary departure.
 
 
 15
 105 S. Ct. at 2103.
 
 
 16
 Reyes argues that, unlike the petitioner in Rios-Pineda, she originally entered this country legally pursuant to a visa, she always has cooperated with immigration officials, and she did not engage in frivolous appeals. We are unpersuaded that these distinctions mandate a different result from that in Rios-Pineda. First, the language in Rios-Pineda relied on by Reyes merely sets forth a specific type of conduct that is within the Board's discretion. It does not stand for the proposition that the Board must distinguish between petitioners who originally entered the country illegally and those who entered legally. Nor does the language stand for the proposition that the Board should not deny motions to reopen deportation proceedings filed by aliens who at one time were legally in this country. Second, regardless of whether Reyes originally entered the country legally or illegally, she is now illegally in this country and is admittedly deportable. Her original status cannot change that fact. Only by establishing the factors contained in Sec. 1254(a)(1) could Reyes' proceedings be reopened for the purpose of suspending deportation. Third, this court has upheld the denial of a motion to reopen deportation proceedings of a petitioner who had legally entered the country but overstayed his visa. See, Balani, 669 F.2d at 1159; see also, Achacoso-Sanchez v. INS, No. 85-1528 (7th Cir. Dec. 13, 1985) (holding Board did not abuse its discretion in denying motion to reopen in a case in which petitioner originally entered the country legally pursuant to a visitor's visa but overstayed visa). Accordingly, Reyes' assertions of 'good conduct' do not convince us that we should distinguish this case from Rios-Pineda and find that the Board abused its discretion in denying Reyes' motion.
 
 
 17
 Having found that the Board's refusal to reopen Reyes' proceedings was within its discretion, we cannot overturn its decision. Accordingly, the petition for review is DENIED.
 
 
 
 [1]
 Reyes had testified that as a student in the Philippines she participated in anti-Marcos activities, was disciplined several times for disrupting classes with uninvited speeches, and once was taken from school, detained and questioned for several days
 
 
 [2]
 Section 1254(a)(1) provides:
 (a) As hereinafter prescribed in this section, the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien who applies to the Attorney General for suspension of deportation and--
 (1) is deportable under any law of the United States except the provisions specified in paragraph (2) of this subsection; has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence . . ..
 
 
 [3]
 This standard has been adopted by the First and Seventh Circuits. See, Williams v. INS, 773 F.2d 8, 9 (1st Cir. 1985); Achacoso-Sanchez v. INS, No. 85-1528 (7th Cir. Dec. 13, 1985)